[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 20, 2007
THOMAS K. KAHN
CLERK

————————————————

No. 07-10984

————————————————

D. C. Docket No. 05-00195-CV-RLV-4

THOMAS G. COCKRELL,

Plaintiff-Appellant,

versus

ROBERT S. SPARKS,
Sheriff, Polk County, Georgia,
JAIL CORPORAL KENYON BALLEW,
SERGEANT HENRY KING, III.,

Defendants-Appellees,

KEVIN REDDEN,
Deputy Sheriff, Polk County, Georgia,
Individually and in his
official capacity,

Defendant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

**(December 20, 2007)**

Before BIRCH, CARNES and COX, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's grant of summary judgment to the defendant, Deputy Henry King, on Thomas Cockrell's excessive force claim against King in his individual capacity.

## I.

On the evening of October 2, 2004, Cockrell was arrested for public drunkenness and placed in the Polk County Jail's "drunk tank."[1] While Cockrell was there, an inmate in another cell attempted suicide. Jail policy requires that inmates who attempt suicide be put in the drunk tank because there is nothing in it with which they can hurt themselves. Deputy King, at that time a supervisor at the Polk County Jail, moved Cockrell out of the drunk tank and into a neighboring cell to make room for the other inmate.[2] While King was seeing to the inmate who had

---

[1] We will view the facts in the light most favorable to Cockrell, the non-moving party, as we are required to do at this stage of the proceedings. See Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

[2] We accept it as true that "Deputy King moved Plaintiff from cell 139 (the drunk tank) to adjacent cell 138 in order to accommodate the inmate who attempted suicide" because this statement was included in the defendants' statement of undisputed material facts and Cockrell did not object to it. Under local rules, the district court considers "each of the [party moving for summary judgment]'s facts as admitted unless the respondent . . . directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)." N.D. Ga. R. 56.1(B)(2)(a)(2)(i). For that reason, we do not accept as given Cockrell's contrary statement in his deposition. See Jones v. Gerwens, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) (treating a fact as conceded, under a local district court rule, when the party

2

attempted suicide, Cockrell, still drunk, began banging on the door to his cell with his shoe, shouting for a deputy to let him pay for a bond so that he could be released. King opened Cockrell's cell door, told him to "shut the hell up" and gave Cockrell an open-hand shove. Cockrell fell, broke his hip and wrist, and lacerated his ear. King and Deputy Kenyon Ballew, who was also on duty in the jail at the time, immediately summoned medical attention for Cockrell, and he was taken to the hospital that night.

Cockrell filed a complaint asserting, among other state and federal claims, a 42 U.S.C. § 1983 excessive force claim against the Sheriff of Polk County and Deputy Kevin Redden, whom he believed to be the deputy who shoved him, in their official and individual capacities. During discovery, Cockrell realized that Deputy King, not Redden, had shoved him. Cockrell then made a motion, which the district court granted, to dismiss Redden and add King and Ballew as defendants. Those two were served with the complaint, but the factual allegations stated that Redden pushed Cockrell, making no mention of King and Ballew.

The defendants then moved for summary judgment on various grounds, including that the complaint failed to state a claim against Deputy King because it

opposing summary judgment failed to object to the fact in the movant's statement of undisputed material facts).

3

still alleged that the excessive force had been used by Deputy Redden, not by King. In response, Cockrell moved for leave to amend his complaint. In that motion, he also abandoned all of his claims against the defendants with the exception of the excessive force claim against King in his individual capacity.

In a consolidated order, the district court denied the motion to amend as futile and granted summary judgment to the defendants. As to all of the defendants except Deputy King, the district court ruled that Cockrell had abandoned his claims. The court granted summary judgment to King in his individual capacity on the excessive force claim (the only claim Cockrell wanted to assert against him) because the complaint made no allegations against him, and, in the alternative, because shoving "a belligerent, drunk, yelling inmate while also trying to see that a prisoner who had just attempted suicide was placed in a more secure environment" did not violate the Constitution.

Cockrell contests only the denial of his motion to amend and the grant of summary judgment insofar as they involve his intended claim against King in his individual capacity on the excessive force claim.

## II.

We first address whether the district court erred in denying as futile Cockrell's motion to amend his complaint to name Deputy King instead of Deputy

4

Redden. Although we review a district court's denial of a motion to amend only for abuse of discretion, we review de novo a decision that a particular amendment to the complaint would be futile. Harris v. Ivax Corp., 182 F.3d 799, 802 (11th Cir. 1999). Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant. See Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004). Cockrell's motion to amend was futile, and therefore properly denied, only if King would be entitled to summary judgment on the merits of the claim if the amendment were allowed. Because we conclude below that King would be entitled to summary judgment on the merits, the district court correctly held that Cockrell's motion to amend was futile.

### III.

We review a district court's grant of summary judgment using the same legal standards that the district court was required to apply in its decision. Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1424 (11th Cir. 1997).

Government action, including the use of force by prison guards, will only violate substantive due process rights under the Fourteenth Amendment when it is so egregious that it shocks the conscience. See Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003). In both Fourteenth and Eighth Amendment excessive force

5

claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case). If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily shocks the conscience. See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (stating that the Eighth and Fourteenth Amendments give equivalent protections against excessive force). If not, then it does not.

Under this standard, we look at "the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner." Id. (citing Whitley, 475 U.S. at 321, 106 S. Ct. at 1085). Additionally, we consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321, 106 S. Ct. at 1085. Not only

that, but we must also give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Applying that law, we conclude that, although it is a close question, Deputy King is entitled to summary judgment on the merits. Cockrell was creating a disturbance, and, given the need to relocate the inmate who had attempted suicide, King legitimately needed to quiet Cockrell. It was not unreasonable for him to use some force to do that. As we said in Bennett, "[t]he need for the use of force is established by the undisputed evidence that [the inmate] created a disturbance. . . . Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Id. The amount of force conveyed by an open-handed push or shove is as near to the minimum amount as an officer can employ, and it is not disproportionate to the need to restore order when dealing with a drunk and boisterous inmate. In the Bennett case we held that grabbing an inmate by the throat and pushing him against the bars of his cell during an inmate count was not disproportionate to the need to stop the inmate from shouting and demanding to be let out. Id. at 1531, 1534. The force used here and the occasion for it are similar to those in that case.

7

Although in this case the extent of the injury was relatively extensive, this factor alone is not dispositive. There is no way that Deputy King could have foreseen that a simple push would result in as much injury as Cockrell unfortunately suffered. That the severity of the injury could not have been reasonably anticipated makes it less likely that King acted "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320–21, 106 S. Ct. at 1085 (quotation omitted). That the minimal forced was used to quiet Cockrell to care for another inmate in need of medical attention, instead of for some other reason, also weighs against a finding of excessive force. Finally, the fact that King and Ballew immediately summoned medical assistance for Cockrell, "temper[ed] the severity of [the] forceful response," id., and makes it less likely that either of them was acting sadistically instead of in good faith.

Although threatening comments are circumstantial evidence of mental state that can be considered in determining the intent underlying the use of force, Bozeman, 422 F.3d at 1272, the fact that Deputy King told Cockrell to "shut the hell up" evidences a desire to restore order, not a wish to sadistically cause harm.

After carefully considering all of the circumstances, as we are required to do, we conclude that the unfortunate extent of Cockrell's injuries, which resulted from a push or shove by Deputy King, are not the result of force applied

8

maliciously and sadistically for the purpose of causing harm, but instead resulted from force applied in a good faith effort to maintain or restore discipline in a difficult situation. Whitley, 475 U.S. at 320–21, 106 S. Ct. at 1085. King's actions therefore do not shock the conscience. For that reason, the district court did not err in denying Cockrell's motion to amend as futile because King would have been entitled to summary judgment on the claim against him if the amendment were allowed.

**AFFIRMED.**